IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HOLLY COKELEY,                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        Case No. 13-2518-JWL
                                        )
MIDLAND CREDIT MANAGEMENT, INC.,        )
                                        )
                    Defendant.          )
                                        )
_____ )

## MEMORANDUM AND ORDER

Plaintiff Holly Cokeley asserts claims against defendant Midland Credit

Management, Inc. under the Fair Debt Collection Practices Act ("FDCPA" or "the Act"),

15 U.S.C. §§ 1692 *et seq.*  This matter comes before the Court on defendant's motion for

summary judgment (Doc. # 23).  For the reasons set forth below, the Court **grants** the

motion, and defendant is awarded summary judgment on plaintiff's claims in this case.

## I.    __Facts__[1]

On August 28, 2013, defendant purchased an account on which plaintiff had

defaulted.  On September 7, 2013, a representative of defendant telephoned and spoke

to plaintiff about the account.  The call was recorded by defendant, and the transcript of

_____

[1]The facts as stated herein are uncontroverted or are related in the light most
favorable to plaintiff, in accordance with the applicable summary judgment standards.

the entire call reads as follows ("P" refers to plaintiff; "D" refers to defendant's representative):

D:      Hello.

P:      Hello.

D:      Hi.  Holly?

P:      Yeah.

D:      Ms. Cokeley?  I'm talking to Holly Cokeley?

P:      Yes.

D:      Hi, ma'am.  This call may be recorded or monitored.  Ms. Cokeley, my name is [name of representative].  I'm your account manager from Midland Credit Management, a debt collection company, and it's an attempt to collect a debt.  Any information obtained will be used for that purpose.  I'm calling you in regards to a potential lawsuit which you might have to face soon for your Paypal Smart Connect credit card from GE Capital Retail Bank in which the balance is $747.71.  And right now your account is in prelegal status due to nonpayments on the account, and I'm giving you a call so that we can go ahead and work out some sort of monthly payment or a settlement on the account and help you avoid a possible lawsuit on the account.  You tell me how –

P:      You're going to sue me?

D:      I'm sorry?

P:      You're going to sue me?

D:      Ma'am, I'm giving you the information, right, for I'm giving you a call –

P:      I'm asking a question.  Are you going to sue me or not?

D:      Ma'am, we are here to – I'm giving you a call for a possible

2

lawsuit on the account, right?

P:      So you are or you are not going to sue me?

D:      Because –

P:      I'm not going to pay it.  I just need to know if you're going to sue
        me or not.

D:      You are not going to pay that?  You're going to say that?

P:      Right.  I don't have the money to pay it.  So I just need to know if
        you're going to sue me or not.

D:      I'm not sure.  It might happen.  I'm not sure.

P:      Okay.  Thank you.

Defendant then sent plaintiff written correspondence, titled "NOTICE OF NEW

OWNERSHIP *AND* PRE-LEGAL REVIEW," dated September 8, 2013.  The notice

stated that plaintiff's account had been sold and that defendant would be collecting on

that account, and it included a payment due date of October 23, 2013.  The notice

included the following statements:

> Midland Credit Management, Inc. is considering forwarding this account
> to an attorney in your state for possible litigation.  However, such
> forwarding will not occur until after the expiration of the time period
> described on the back of the letter.  Upon receipt of this notice, please call
> to discuss your options.

> If we don't hear from you or receive payment by 10-23-2013, we may
> proceed with forwarding this account to any attorney.

> **What do you need to do to stop this process from continuing?**
>     1)  Mail in $300.00 and call to set up your remaining payments.
>     2)  Call us today to see how to qualify for discounts and payment
>     plans.

3

**LET US HELP YOU!**  If the account goes to any attorney, our flexible options may no longer be available to you.  There still is an opportunity to make arrangements with us.  **We encourage you to call us today: (800) . . .**

The notice also listed, among the "Benefits of Paying," the following: "This may be your last chance to work with us before the account goes to an attorney."

On September 27, 2013, a representative for defendant telephoned plaintiff, but the call was not answered, and the representative did not leave a message.  Later that day, plaintiff telephoned defendant and spoke with a representative, as follows:

D:   Midland Credit Management.   This is [name of representative], account manager.  How can I help you?

P:   I have missed a call from you guys.

D:   Okay.  One second, ma'am.  And whom am I speaking to?

P:   Holly Cokeley.

D:   Okay, Holly.  And I just have got to verify the last four of the social for security purposes.

P:   [Number given].

D:   One second here.  All right, Holly.  We are calling here in regards to, looks like a prelegal status here on one of your accounts.  It looks like a GE Capital Retail Bank, Paypal.

P:   What kind of status?

D:   It's prelegal status, Midland, the debt collection company here.

P:   What does that mean?

D:   Well, they're looking at possible litigations [*sic*] here to

4

resolve the account.  Obviously, we're calling to try to avoid that situation, work something out with you on a voluntary basis.

P:      You're trying to avoid suing me?

D:      Correct.  Yeah, they are looking at possible litigation.  So we're trying to save the situation here by making phone calls to prevent this.  The balance you are looking at here is 747.71.  We are still able to break it down into some payments.  We can settle it out here.  What do you think might help me out here on this?

P:      I can't [do] anything on it.  So what happens if I can't pay it?

D:      Well, then at that time the documentation and recommendation for attorney placement would be applied to the account.  You don't have anybody you can talk to for some help to try to get this taken care of?

P:      It's been delinquent for quite some time.  I would like to think if someone would help me, I would have already sought that avenue out.  I don't have anybody that can help me.  Unfortunately, I went from having two incomes in my home to having one and lost all my credit cards, my car and everything.  So no, there's nothing that I can do.  I just need to know what the repercussions are going to be if I don't pay it.

D:      If you don't pay?

P:      Right.

D:      Right.  Like I said, at this time if you're telling me that you are unable to pay it, then that documentation would be applied, that there's no arrangement.  It looks like the letter that we recently sent out, that is valid until the 23rd of October.  So I mean, we would obviously keep it paused at least until then because that letter does give you that due date.  But after that, if there's no agreement set up, then we

5

would have the opportunity to hold it at that point where they could recommend –

P:   So then I'm going to be sued after that?

D:   Well, you could possibly be.  I can't tell you for sure.  I don't make that ultimate decision.

P:   Who does?

D:   That's Midland Credit Management, they determine that.  I don't – I'm just –

P:   So that's who you are, right?

D:   Right.  I work for them, but I don't make the ultimate decision.  It's a decision based on –

P:   So who would I need to speak to, then?

D:   As far as what questions are you wondering about?

P:   I can't pay it.  I can't pay it now.  I can't pay it on October 23rd.  I can't pay it before the letter expires.  So obviously there's nothing that I can do.  So what do I – who do I need to talk to?  Because if you're going to sue me, then you're going to sue me, and there's nothing that I can do about it.  I just need to know what I need to be prepared for.

D:   You know, we're not – definitely not attorneys.  There's nothing we could advise you as far as what may happen.  You know, I don't know that there would be anybody that you could talk to because it's typically as a collector grade person like I am, and anybody that you would speak to, like I said, we don't make that ultimate decision.  That's Midland's decision based on, you know, the information that they have on the account.  There isn't a a person that you would be able to speak to that would be able to give you the information.  So it is recommended –

P:   So the company – the organization makes the decision, but

6

<div style="margin-left:2em">

there has to be somebody that pushes the button, right?

D:      Right.  But at that time, then, when the recommendation is made, it is possibly placed with an attorney.  Then the decision would be made on how it's handled from there with that law firm.  So we wouldn't even be able to give you any information until that did happen or if it didn't happen.  I don't know.  I can't make that ultimate decision.  Like I said, it's not my call.

P:      All right.  I guess there's –

D:      I can certainly –

P:      – nothing that I can do.

D:      I can update the situation here for you.  Okay?

P:      Yep.

D:      Okay.  Thanks for the call.

P:      Yep.

</div>

The parties did not have any other contact before plaintiff filed the instant suit on October 8, 2013.

## II.      **Summary Judgment Standards**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th

Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and

8

inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.    __Analysis__

    *A.*    ___Section 1692d___

Plaintiff asserts a claim for a violation of Section 1692d of the FDCPA.  That section provides in relevant part as follows:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> > (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. § 1692d(5).  Although plaintiff has not identified a particular paragraph of Section 1692d that underlies her claim, Paragraph (5) is the only one that could be relevant here.  Moreover, in the pretrial order, plaintiff states her legal claim as follows: "Defendant's continued calls after Plaintiff advised she wasn't going to pay the account show *an intent to harass* and violate 15 U.S.C. § 1692d." (Emphasis added.)  Plaintiff's reference to an intent to harass in stating her claim clearly refers to Paragraph (5). Moreover, in her brief, plaintiff argues that calls after a consumer states that she cannot pay demonstrate an intent to annoy or harass, which argument clearly implicates

Paragraph (5), and the case that plaintiff cites in support of that argument involved that specific paragraph. *See Prewitt v. Wolpoff & Abramson, LLP*, 2007 WL 841778 (W.D.N.Y. Mar. 19, 2007). Accordingly, the Court will analyze plaintiff's claim under Section 1692d(5).[2]

The Court first concludes that defendant cannot have violated Section 1692d(5) because it did not call plaintiff "repeatedly or continuously." Defendant called plaintiff for the first time on September 7, 2013, and it called again on September 27, 2013, when no one answered and no message was left. In considering claims under this statutory provision, various courts have applied the FTC's definition of "repeatedly" to mean "calling with excessive frequency under the circumstances," and "continuously" to mean "making a series of telephone calls right after the other." *See, e.g.*, *Druschel v. CCB Credit Servs., Inc.*, 2011 WL 2681637, at *5 n.10 (M.D. Fla. June 14, 2011) (quoting FTC Staff Comm. on FDCPA, 53 Fed. Reg. 50097-02, at 50105 (Dec. 13, 1988)). The Court agrees that such definitions are appropriate and in accord with the generally-understood meaning of those terms as used in this context. Applying those definitions,

---

[2]The Court agrees with those courts that have held that if Paragraph (5) is directly implicated by the facts of the case—i.e., the plaintiff relies solely on telephone calls for the harassing conduct—the plaintiff may not instead base her claim soley on the preface of Section 1692d, as such an interpretation would allow for the intent element of Paragraph (5) to be eviscerated and for Paragraph (5) to be rendered superfluous. *See, e.g.*, *Little v. Portfolio Recovery Assocs., LLC*, 2014 WL 1400660, at *1 n.1 (D. Kan. Apr. 10, 2014) (Marten, J.) (citing other cases). Even if this Court were to consider a claim solely under the preface of Section 1692d, it would conclude that no reasonable jury could find this conduct to have violated that provision.

the Court concludes as a matter of law that making two calls 20 days apart does not constitute calling repeatedly or continuously. Plaintiff has not cited any authority to suggest that making two calls could satisfy that requirement of the statute, and the Court is not aware of any such authority. *Cf., e.g.*, *Shuler v. Ingram & Assocs.*, 441 F. App'x 712, 718 (11th Cir. 2011) (unpub. op.) (affirming summary judgment in favor of defendant; making five calls, including one successful contact lasting less than five minutes and two voicemail messages left, did not constitute repeated or continuous attempts to harass under Section 1692d(5)); *Sutton v. New Century Fin. Servs.*, 2006 WL 2038500, at *2 (D.N.J. July 19, 2006) (denying leave to amend as futile; two calls over a two-month period did not show that the defendant made repeated or continuous calls with the intent to harass).

In her brief, plaintiff has not attempted to explain how two calls could be considered "repeated" or "continuous" under the statute. Rather, plaintiff argues that a factual dispute arises concerning the number of calls placed by defendant to plaintiff. The Court rejects this argument. Defendant submitted a declaration stating that it called plaintiff only twice. Plaintiff has controverted that evidence only by stating that certain log entries in a report attached to defendant's declaration are "indecipherable" with respect to conduct occurring at five different times within a 12-minute period on September 27, 2013, and at one time on October 1, 2013. Those disputed entries, however, do not contain language suggesting that additional calls were made to plaintiff at those times, and plaintiff has not submitted any evidence of her own to contradict the

11

sworn statement by defendant's representative that defendant called plaintiff only on two

occasions.  Therefore, the Court must accept as an uncontroverted fact that defendant

called plaintiff only two times.[3]

The Court also concludes that summary judgment is appropriate on this claim

because there is no evidence that defendant acted with an intent to annoy, abuse, or

harass plaintiff.

> Courts have generally considered two types of evidence of an intent to
> harass [under Section 1692d(5)].  First, where a plaintiff has shown that
> he asked the collection agency to stop calling or has informed the
> collection agency that it has the wrong number, and the collection agency
> nevertheless continued to call the plaintiff, courts have found intent.
> Second, the volume and pattern of the calls may themselves evidence an
> intent to harass.

*See Hendricks v. CBE Group, Inc.*, 891 F. Supp. 2d 982, 896 (N.D. Ill. 2012) (citations

omitted) (citing cases); *see also, e.g.*, *Higgs v. Diversified Consultants, Inc.*, 2014 WL

1374055, at *3 (W.D. Mo. Apr. 8, 2014) (citing *Hendricks*).  As noted above, defendant

made only two calls to plaintiff, 20 days apart.  Thus, no intent to harass may be inferred

here from the volume and pattern of calls.  Indeed, courts in this district have recognized

that even "[a] high volume of calls, even daily calls, unaccompanied by other egregious

conduct is insufficient to raise a triable issue of fact for the jury."  *See Webb v. Premiere*

*Credit of N. Am., LLC*, 2012 WL 5199754, at *3 (D. Kan. Oct. 22, 2012) (Robinson, J.)

---

[3]Even if defendant were deemed also to have called plaintiff on October 1, 2013, and more than once on September 27, 2013 (when no one answered), the Court would still conclude as a matter of law that defendant did not call repeatedly or continuously as required by the statute.

(citing *Carman v. CBE Group, Inc.*, 782 F. Supp. 2d 1223, 1229-31 (D. Kan. 2011) (Robinson, J.)); *see also Little v. Portfolio Recovery Assocs., LLC*, 2014 WL 1400660, at *2 (D. Kan. Apr. 20, 2014) (Marten, J.) (noting that *Webb* is consistent with other decisions interpreting Section 1692d); *Lynch v. Nelson Watson & Assocs., LLC*, 2011 WL 2472588, *2 (D. Kan. June 21, 2011) (Melgren, J.) (citing *Carman*).

Moreover, the undisputed evidence concerning the two telephone contacts between the parties reveals that plaintiff did not ask defendant to stop calling her. Plaintiff argues that intent to harass should be inferred from the fact that defendant called her again after she stated in the first call that she did not have the money to pay the debt. Such conduct falls far short, however, of the sort of egregious conduct that could create a reasonable inference of an intent to harass. Plaintiff did not tell defendant not to call her, and defendant quite reasonably could have chosen to call her weeks later to see whether her financial situation had changed. Plaintiff has not cited any authority to suggest that a single call following a declaration of an inability to pay could create an reasonable inference of an intent to harass. Plaintiff cites *Prewitt v. Wolpoff & Abramson, LLP*, 2007 WL 841778 (W.D.N.Y. Mar. 19, 2007), in which the court denied summary judgment on a claim under Section 1692d(5), in part based on evidence that the plaintiff had indicated that he could not pay. *See id.* at *3. In that case, however, the court specifically noted that the *frequency* of calls after that statement could demonstrate to a jury an intent to harass. *See id.* In this case, there was only one call after plaintiff stated that she could not pay; thus, *Prewitt* does not provide support for plaintiff's claim

13

here.

For these reasons, the Court concludes that no reasonable jury could infer, from this evidence, viewed in the light most favorable to plaintiff, that defendant acted with an intent to harass plaintiff.[4]  Moreover, as concluded above, defendant did not call plaintiff "repeatedly or continuously."  Therefore, the Court grants summary judgment in favor of defendant on plaintiff's claim for a violation of Section 1692d of the FDCPA.

> *B.*    *Section 1692e*

Plaintiff also asserts a claim under Section 1692e(10) of the FDCPA, which provides as follows:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> > (10)   The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer.

---

[4]Plaintiff cites the statement by the court in *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985), that "[o]rdinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury."  *See id.* at 1179.  The *Jeter* court, however, immediately followed that statement by noting that "[n]evertheless, Congress has indicated its desire for the courts to structure the confines of § 1692d," *see id.* (citing legislative history), and it proceeded to affirm a summary judgment granted in favor of the defendant on a claim under Section 1692d.  *See id.*  In this case, because there is no evidence of an intent to harass, plaintiff cannot sustain her claim as a matter of law.

15 U.S.C. § 1692e(10).[5]  For claims under the FDCPA, the Tenth Circuit, in at least one

unpublished case, has followed the other circuit courts and applied an objective "least

sophisticated consumer" standard.  *See Ferree v. Marianos*, 129 F.3d 130 (Table), 1997

WL 687693, at *1 (10th Cir. Nov. 3, 1997) (unpub. op.); *see also, e.g.*, *Brown v. Card

Serv. Ctr.*, 464 F.3d 450, 453-54 & n.2 (3d Cir. 2006) (following 2d, 4th, 6th, 9th, and

11th Circuits  in applying the least sophisticated consumer standard).  The Tenth Circuit

described the standard as follows:

> The test is how the least sophisticated consumer—not one having the astuteness of a "Philadelphia lawyer" or even the sophistication of the average everyday, common consumer—understands the notice he or she receives.  The hypothetical consumer, however, can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.

*Ferree*, 1997 WL 687693, at *1 (citations and internal quotations omitted).  This Court

has previously applied this standard, *see Jeter v. Alliance One Receivables Mgmt., Inc.*,

2010 WL 2025213, at *2 & n.1 (D. Kan. May 20, 2010) (Lungstrum, J.) (citing, *inter

alia*, *Ferree*), and it will do so again in this case.

In support of her claim that defendant made false or misleading statements to her,

plaintiff cites various statements from defendant's written notice and the two telephone

conversations.  From the written notice, plaintiff cites the reference to "pre-legal review"

---

[5]Paragraph (5) of Section 1692e makes the following conduct a violation:  "The threat to take any action that cannot legally be taken or that is not intended to be taken." *See* 15 U.S.C. § 1692e(5).  In her brief, however, plaintiff specifically states that she is not asserting a claim under that provision.

and the statement that defendant "is considering forwarding this account to an attorney in your state for possible litigation." From the first telephone conversation, plaintiff cites the statements by defendant's representative that he was calling "in regards to a potential lawsuit which [plaintiff] might have to face soon;" that plaintiff's account was "in prelegal status;" and that he was calling to help plaintiff "avoid a possible lawsuit on the account." From the second telephone conversation, plaintiff cites the statements by defendant's representative that the account was in "prelegal status;" that defendant was "looking at possible litigation" to resolve the account; and that if she did not pay the amount due, "recommendation for attorney placement would be applied to the account."

Plaintiff argues that her claim that such statements were deceptive or misleading is supported by evidence that no such review was taking place and that no particular person at defendant's company was considering or looking at whether to involve attorneys or to file suit against plaintiff. Plaintiff also cites to evidence that defendant never sued plaintiff on the account or even referred the matter to an attorney for possible litigation.

The Court concludes as a matter of law that plaintiff has not submitted evidence that any of defendant's statements to her were misleading or deceptive. First, defendant did not represent to plaintiff that it *would* sue her if she did not pay, or even that it would definitely refer her case to an attorney. It merely stated that it was *considering* forwarding her account to an attorney for *possible* litigation (written notice); that it *may* proceed with forwarding the account to an attorney (written notice); that plaintiff *might*

16

have to face a *potential* lawsuit (first call); that plaintiff should try to avoid a *possible* lawsuit (first call); that litigation was *possible* (second call); that defendant *could* recommend attorney placement (second call); and that when the recommendation is made, the account would *possibly* be placed with an attorney (second call).  Thus, defendant consistently told plaintiff that placement with an attorney and ultimate litigation were possibilities if she did not pay the debt by the deadline it gave her.  It is true that in the second call, defendant's representative stated that if she did not pay, "then at that time the documentation and recommendation for attorney placement would be applied to the account."  The speaker made clear following that statement, however, that the account would "be possibly placed with an attorney," and that such decision had not yet been made.

Such statements about the *possibility* of attorney referral and litigation would be deceptive or misleading, then, only if such referral or litigation was *not* in fact a possibility—that is, if defendant knew at that time that it would not refer the account to an attorney or sue plaintiff on the debt.  Plaintiff has not submitted evidence of any such knowledge or lack of intent by defendant.  Plaintiff argues that defendant was not in fact reviewing plaintiff's account or considering litigation against her.  Plaintiff cites to the Rule 30(b)(6) deposition of defendant.  The deponent, however, did not testify that defendant was not considering litigation against plaintiff; rather, he testified that he could not identify by name any particular person at the company who was engaged in a review of plaintiff's account or was actually considering the question of litigation at

17

the time of the statements.[6]  He did testify that, as a matter of policy and procedure, in the event that plaintiff did not pay by her deadline, defendant as a company would decide whether to refer the case to an attorney, who would then decide whether to initiate litigation.  Defendant also submitted a declaration by that deponent in which he states that defendant "has a procedure by which it determines whether to send delinquent accounts to collection counsel (based on criteria such as the amount of the delinquent account, the amount of time an account has been in collections, the account holder's employment status, the account holder's jurisdiction, etc.)."[7]

The use of the word "prelegal" by defendant was accurate, as no legal proceedings or legal referral had yet been initiated.  That word may imply that legal proceedings are a possibility, but again, plaintiff has not submitted evidence that such proceedings were not, in fact, a possibility.  The use of the words "review" and "considering" and "looking at," in the plain and ordinary sense, did not mean necessarily

---

[6]Plaintiff complains in her brief that defendant's Rule 30(b)(6) designee was ill-prepared, but she did not file any motion under Fed. R. Civ. P. 30 or 37 to compel additional testimony.  Thus, the Court is left with the particular evidentiary record as it stands.

[7]Plaintiff complains that this declaration is inconsistent with defendant's deposition testimony and should therefore not be considered.  *See Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1016 (10th Cir. 2003) (sham affidavit in conflict with deposition testimony may be disregarded).  The designee's declaration was not inconsistent with his deposition testimony, however.  At the deposition, the designee did testify to such a procedure, and he was not asked about any particular criteria at the deposition.  He could not identify particular persons in the deposition, and he did not identify any particular persons in his declaration.  Thus, the Court will consider the declaration.

that an employee of defendant was at that time conducting a review and trying to decide what to do with plaintiff's account; indeed, it should have been apparent even to the least sophisticated consumer that such a decision was not to be made until the deadline had passed without payment by the consumer. That is even more true with respect to defendant's initial call and official written notice to the debtor, as that person could hardly be misled, under an objective standard, that the collection company was already engaging in an analysis about attorney referral without first waiting to see whether initial collection efforts bore fruit.

The Court also concludes that the fact that defendant never referred the case to an attorney or sued plaintiff does not create any reasonable inference that defendant never intended to do such things when it made the statements to plaintiff. Defendant gave plaintiff an explicit deadline of October 23, 2013, for payment of the debt, after which time litigation would become a possibility. Plaintiff, however, initiated the present lawsuit on October 8, 2013, prior to that deadline. Defendant submitted evidence that, as a matter of policy, it ceases all collection activity if a consumer files a lawsuit against it.[8] Plaintiff complains that defendant's designee was unable to say whether there was a *written* policy to that effect, but the lack of a written policy in evidence does not controvert the evidence that defendant did cease activity upon being sued as a matter of standard operating procedure. Moreover, even if defendant had no such policy, one

---

[8]Again, the declaration submitted by defendant is not inconsistent with its deposition with respect to this subject.

would easily and reasonably expect a debt collector to cease collection activity after having been sued. Thus, the fact that defendant did not take steps down the road to litigation either prior to the payment deadline it gave plaintiff or after plaintiff brought suit against it does not serve as evidence or create any reasonable inference that defendant never intended to refer plaintiff's account to an attorney under any circumstances. Thus, there is no evidence that defendant was deceptive in stating that referral and litigation were possibilities.

Similarly, there is no basis to find defendant's use of the word "soon" in reference to possible future litigation to be misleading or deceptive. Defendant did not state in that first call that litigation would commence immediately, but instead referred only to the possibility of litigation in the future. Defendant followed up with its written notice the next day, in which it gave plaintiff the deadline for paying, after which time, litigation might ensue. The fact that defendant did not sue before its deadline had expired does not suggest that it falsely stated that litigation could "soon" become possible.

Plaintiff argues at one place in her brief that the case should not be reduced to an analysis of particular snippets of the written notice and calls, but that the notice and calls should be considered in their entirety. The Court agrees, and such consideration reinforces the lack of evidence that defendant violated this provision of the FDCPA. The whole of the notice and the whole of each call make clear that litigation and attorney referral are mentioned only as possibilities if plaintiff did not pay. Especially in the second call, defendant's representative painstakingly made clear that he could not say

that a lawsuit was a certainty, but that the company would decide whether to refer the case for possible litigation after the deadline if plaintiff had not paid by then.

Plaintiff cites only the case of *Brown v. Card Service Center*, 464 F.3d 450 (3d Cir. 2006), as authority in support of her argument, but that court's holding actually weighs in favor of summary judgment in this case. In *Brown*, the court held that the district court had erred in granting a motion to dismiss a claim under Section 1692e. *See id.* at 454-56. The district court had relied on the fact that the letter to the plaintiff had stated merely that the defendant *could* take action (conditionally, not affirmatively), but the Third Circuit concluded that such a statement could still be deceptive if the defendant in fact had no intention of taking such action. *See id.* The court noted that the plaintiff had alleged such a lack of intent in that case. *See id.* at 455. In the present case, plaintiff argues that she should also be permitted to pursue a claim based on a statement that litigation *could* ensue.

The outcome is different in this case, however, because of the different stage of the litigation here. In *Brown*, the claim had been dismissed on the pleadings, and the court concluded that a claim could be proved with evidence that the defendant never intended to take action against the plaintiff. *See id.* The court noted specifically that a jury could conclude that the notice was deceptive if the plaintiff could prove that the defendant "seldom litigated or referred debts such as [the plaintiff's] . . . to an attorney." *See id.* The present case, on the other hand, involves a motion for summary judgment, and thus the time has arrived for plaintiff to identify evidence to support her claim.

Here, plaintiff has submitted no evidence to suggest that defendant seldom litigated or referred such debts to attorneys.  To the contrary, defendant has submitted its own evidence that it has engaged attorneys in Kansas to review debtors' accounts and to initiate suit in some cases.  Nor has plaintiff submitted any other evidence to create a reasonable inference that, at the time defendant stated to plaintiff that referral and litigation were possibilities, in fact it had no such intent to take action against plaintiff. In the absence of such evidence, plaintiff cannot maintain her claim at this stage of the litigation.

For these reasons, the Court grants the motion, and defendant is awarded summary judgment on plaintiff's claim under Section 1692e of the FDCPA.


IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for summary judgment (Doc. # 23) is hereby granted, and defendant is awarded summary judgment on plaintiff's claims in this case.

IT IS SO ORDERED.

Dated this 21st day of October, 2014, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

22